Maybe our bailiff could go and see if he could find our courtroom deputy. Oh, I'm sorry, I thought you, I didn't know you grew back. I couldn't see you. All right, let's, I'm sorry. Let's proceed. I'm sorry. I didn't go in there. Okay, please, the court. The central issue in this appeal is the interpretation of a building ordinance or law rider in a State Farm homeowner's policy. The rider provides that State Farm will pay for legally required changes caused by enforcement of an ordinance or law that is in effect at the time of the loss. Mr. Toney lives in south Texas in Hidalgo County in the city of Mission. Storm in March of 2012 damages his wood shake roof. He files a claim. State Farm and he are unable to agree on the amount of the loss. He invokes appraisal. November of 2012, we get an appraisal award for approximately 67,000. State Farm pays the award but withholds approximately 9,000 that was allocated by the appraisers for the replacement of the decking underneath the wood shake roof with solid decking pursuant to the ICC. State Farm sends Mr. Toney a letter that is very important because it contradicts what State Farm is now claiming the BOL rider means. In other words, State Farm is now said in the district court and the district court agreed and is arguing to this court that because the city of Mission never denied a building permit to Mr. Toney or sanctioned him for having a noncompliant roof, there was no enforcement of any building ordinance or law against him and therefore the BOL rider does not bring the decking within coverage. But in November of 2012, after the appraisal award was issued, State Farm sends Mr. Toney a letter saying here's your payment. We're withholding $9,000 and they explain that they're withholding $9,000 because they are continuing to investigate the decking requirements for replacement of wood shake roofs under the Mission Code of Ordinances. So in other words, in November of 2012, State Farm is investigating what's currently in effect, what was in effect at the time of the loss. The letter appears to indicate that that's exactly what they're looking at. It doesn't say we're not paying for your decking because you haven't applied for a building permit and been denied. It doesn't say we're not paying for your decking because the city hasn't sanctioned you for having a noncompliant roof. It simply says we're looking into what the requirements are. And if enforcement means what they now say that it means, there would have been no investigation necessary because that was readily apparent, that there had been no building permit denial, there had been no affirmative action taken by the city against Mr. Toney. But that's not what they say. Now they say that there was some sort of affirmative action required against Mr. Toney. What do we know about what was required at the time of the loss? Well, we don't know if Mr. Toney had walked into the city of Mission on the date of loss or on the day after the loss and said, I'm applying for a building permit. We don't know what the city of Mission would have said because, as a practical matter, that's not how it works. The way it works is you file your claim, your insurance company pays, and then you go get your building permit. But in this case, State Farm didn't pay. So Mr. Toney never had an opportunity to go to the city and apply for a building permit and be denied. Their interpretation of the policy simply puts an onus on the insured that is not supported by the policy. It says you don't get coverage unless you go and have some affirmative action taken against you. And it raises the question, what if Mr. Toney had gone and had a building permit denied? Would State Farm then be able to say, well, you should have applied for a variance? We don't know if the code was being enforced against you or not because you didn't apply for a variance. Or if you did apply for a variance and it was denied, why didn't you file an appeal? So, I mean, that's just simply not a reasonable construction of the policy. And what we know about what was in effect at the time is that the city says, as of October 24, 2012, right before the appraisal award is issued, they say the city of Mission, Texas requires diaphragm bracing for all wood frame construction as per the IRC. Minimum requirement is 7 16th inch OSB sheathing. This includes roof decks under cedar shakes, which is what Mr. Toney has. So that's what's in effect. Certainly in October 2012, as I said, we don't know what exactly would have happened had Mr. Toney walked into the city in March of 2012, the day after the storm. We have another letter from the city from the same individual at the city dated January that says, well, now we are retracting what we said in our October letter. And now we're no longer requiring plywood decking, solid plywood decking on a re-roof. State Farm, I mean, that's what they rely on. That's the basis for their now, for they say, for their denial of coverage under the BOL rider. But the problem is that tells us what the city of Mission was doing in January 2013. And that's not the question. We know that certainly in January 2013, perhaps they weren't requiring solid decking. But the letter explicitly says that we're retracting our prior letter. We're changing our prior position. They do a 180. And that's why it is so, it is so important that we look at what was in effect on the date of loss. In the BA Properties case, for example. Can you maintain the fact question as to what enforceability means? I'm sorry? You maintain that there's a fact question here for, in order to determine the enforceability? Well, Tony would contend that there is not a fact question because there's only one reasonable interpretation of the policy. Alternatively, though, at best, the policy is ambiguous. If there's more than one reasonable construction, whether it's State Farms, that there has to be some affirmative action, or Tony's, that the question is simply what was there at the time of the loss and what was being done at the time of the loss. Let me just play devil's advocate for a second. The policy language, it talks about enforcement and the laws in effect at the time of the loss. If we only look to the law at the time, at the effect of the loss, that's one thing. But if we also look to see if the law is being enforced at the time of the loss. Okay, what's your evidence other than the law that it was being enforced on the date of the loss? Well, we have, other than the letter, we have a declaration from a roofer who has roofed hundreds, replaced hundreds. Not from the city, from the city. What letter, what did the letter say exactly that says the city's going to enforce this? Well, we don't have a letter from the city because we've never applied for a permit. What evidence is there from the city that, or anybody else, that the city was actually enforcing that law on the date of the loss? Well, the best evidence that we have is the October 2012 letter. That's the best evidence we have because we're simply not going to know what would have happened if Mr. Tony had walked in in March and asked for a building permit. We have the letter from the city. We also have the declaration of Mr. I'm sorry, his name just escaped me. We also have the declaration. Black? Mr. Black. I was thinking Blake. Mr. Black. We also have the declaration of Mr. Black. And the district court found that that was conclusory. Why is that? I mean, I disagree with that conclusion. I don't believe it's. I find that's clearly, that's a big standard for you to overcome, but I don't understand why that was not some evidence. Well, and I believe also that even if you look at the portion of Mr. Black's declaration that is purported to be a legal conclusion, where he says the city was enforcing it at the time, there are still other facts within the declaration that are clearly within his personal knowledge that would be some evidence that could lead a reasonable fact finder to believe that the city was enforcing the requirement at the time of the loss. He says he did hundreds of re-roofs as a result of that storm and that he didn't recall installing a single one without solid plywood decking. Now, while that is certainly not the city of mission saying we were enforcing it on that day and we would have enforced it against you, but it is some evidence that even if the court found that his legal, that his conclusion that it was being enforced was an inadmissible legal conclusion, that's still some evidence from his declaration that could lead a reasonable jury to believe that there was enforcement. Why wouldn't he know whether it's being enforced or not if he's doing all these other roofing jobs? I mean, he would know that I'm not going to get a permit if I don't follow the— why wouldn't he have some knowledge of that regardless of—it's not a legal position. He's just informed of that because that's his business to be informed of that. And I agree, Judge Elrond, and I believe that's exactly what his declaration says. I think that perhaps the court and State Farm were somewhat hung up on his use of the word enforcing because, I mean, we're looking at it as a term of art in the BOL rider. He uses the term enforcing, and I think the court certainly looked at that as a legal conclusion. I don't believe it's a legal conclusion. I think that his personal knowledge is well laid out in his declaration, and it's certainly reasonable that as a roofer who's been working in that area for a number of years and deals with the city on these issues all the time, that he would know that. But State Farm appears to argue that even assuming that the court had admitted that affidavit or had considered the affidavit or the declaration, State Farm seems to contend that it still wouldn't matter because there was no affirmative enforcement, and that's simply not a realistic view of the policy. I mean, State Farm, they talk about Mr. Tony not being entitled to a windfall. Well, State Farm's not entitled to a windfall when they don't pay a claim for six months, and then the law changes or there's some change in the enforcement. Why should State Farm be entitled to the windfall of not having paid the claim in a timely manner? So all during the appraisal process, this was not an issue, right? Correct, because there was no award. They hadn't declined coverage at that time. Right, but there was no indication that you needed to be gathering information contemporaneous. No, there was not. Our client invoked appraisal, actually, in this case. Our client invoked appraisal. I believe the process took around three or four months, and then when the award comes, the letter from State Farm certainly appears to contradict what their position is now because at the time, they acknowledge that what they're looking into is what the requirement is, and the case law is clear, and they've cited in their brief in the St. Luke's case that the court points out, is there some disagreement between our position and State Farm's position about exactly what the IRC says? But the question, according to the St. Luke's opinion, is not what the code says, but what the city was actually doing. What were they actually carrying out? And we believe the evidence shows that they were enforcing the solid decking requirement. There's no evidence to the contrary. And while I do believe that it's conclusive that there's only one reasonable interpretation of the contract and that the evidence is conclusive that it was being enforced, in the alternative, if the court finds that there is more than one reasonable conclusion, then that certainly leaves a fact issue. It doesn't entitle Tony to summary judgment, but it requires reversal and remand so that a fact finder can consider the meaning of the provision. Even if the court accepts Tony's construction and says that enforcement means something other than what the city was doing generally at the time of the loss, there's still a fact issue. We have the evidence from Mr. Black. We have the declaration from Mr. Black that talks about his experience with the city during that time period. And while not conclusive, that is at least some evidence that could lead a reasonable jury to believe that there was some enforcement or that there would have been enforcement had he applied for a permit. And I think as a practical matter, the way that this BOL rider often comes into play is you have a claim, they pay the claim, you're making your repairs, and the city comes in and says, oh, here's this, you've got to do these code upgrades, or we have this ordinance that requires you to do something different. You go to State Farm and State Farm says, okay, well, since this is being enforced against you, here's what your policy covers, here's the extent to which we cover it. We didn't have a chance to do that here because he never was able to make an application because they didn't pay the claim. And it just cannot be the law that in order to trigger coverage under the insurance policy, the insured has to go take the affirmative act either of applying for a building permit when they don't have the funds to actually do the project and be denied, apply for a noncompliant building permit and be denied, or somehow make noncompliant repairs and wait for the city to sanction them. It's simply not realistic and it's not supported by the policy. It puts a requirement on the insured that's simply not there. And I would submit to the court that if the shoe were on the other foot, and this were more like the BA Properties case where the requirement was not in effect at the time of the loss, there were requirements that were enacted subsequent to the loss, and in that case the court said you look at replacement costs at the time of the loss, not what happens later, you look at the replacement cost at the time of the loss and what was in effect at the time of the loss. I submit to you if there had been additional requirements that had been put on, that had been enacted in between the storm and appraisal and when State Farm paid, that State Farm would be here saying, well, those weren't in effect at the time of the loss, and here's what the policy says. It says they have to be in effect at the time of the loss. Thank you. May it please the court. My name is Robert Owen. I'm here on behalf of State Farm. The Tonys are focused exclusively on the enforcement term of the building ordinance or law rider. That's not the only requirement. To trigger coverage under the ordinance or law rider, they have to establish that there is a legally required change to an undamaged portion of a dwelling that's caused by the enforcement of an ordinance and that that ordinance is in effect at the time of the loss. There's no evidence of causation in this case. The Tonys did not install solid decking, and they can't show that the City of Mission ever required them to do so. So even assuming there would be an enforcement generally, as Mr. Black's affidavit seems to suggest, that didn't happen in this case because the Tonys didn't install the decking. You're suggesting that they wouldn't have installed it if the insurance company had paid for the installation? Oh, I'm sure they would have installed it. It would have been an upgrade to their house. But for the absence of coverage, they went ahead with it. I'm sorry? I just don't follow your suggestion of a causation. I don't know. Okay. Maybe I can explain it better as I go through the analysis. So essentially there are three elements that we have to meet to trigger coverage. Well, actually, let me step back once further. The policy generally covers the cost to repair or replace a dwelling with similar construction. So that would be a replacement of the house as it exists, so space decking. And that's what State Farm has agreed to pay. They've paid the appraisal award with the exception of the $9,000 attributable sum. They're not going to pay for something more than it takes to put it back the way it was unless the law requires it to do so. That's true. But now you have an affidavit or a statement from a fellow that works in the industry and doing this day after day after day, and he says that it's enforced. To me, I don't see any legal conclusion in that. I mean, a man that's out there doing the roofing, they know darn well whether something's being enforced or not. That's their business, and you don't need a lawyer to do that. The guy tells you you can do it, you can't do it. So there he is, and he's doing it. And, of course, he makes money by doing it. So that, to me, is strong evidence, and nobody pays attention. Is that not relevant? No, I don't think it is. What Mr. Black says is that in 2012 the city was enforcing generally an ordinance that required solid decking, and he says that he installed solid decking on each of his re-roofs. But he says nothing as to what the city required Mr. Tony to do, and there's no evidence that the city required the Tonys to do anything. Well, are you saying that he would have to go all the way through and try to get a variance and haggle with the city, and if he didn't do that, then he can't say what the city would require? I think no. What I'm saying is that if you look at the facts of this case, it seems that if the Tonys had applied for a permit and said we are going to rebuild the roof with solid decking, that the city would have said okay. That's what the city then said in January of 2013 when it said the code does not require solid sheathing to be placed for a re-roofing project. Why does it seem that way in 2012? Because the 2013 is a repudiation of the city's position in 2012. They say we retract our earlier statement. So I would say that's actually some evidence that the city had the contrary position rather than some evidence that the city all along didn't require. You don't retract an earlier position if it's consistent with your 2013 position. No, I understand that, but the ordinance itself has never changed. The ordinance was put into effect in 2000 or 2001. I'm sorry, I don't remember the exact date. It's part of a standard code that the city of Michigan adopted, but part of that standard code contemplates its interpretation by city officials, et cetera. So what you have then is evidence of, it seems to me, in the form of this statement by the builder out there, Roofer, that this is the way it's being interpreted by the officials, so that textually it's sound, the ensured argument is sound, that this is what the city is requiring. Well, the statement of the Roofer is the Roofer's understanding of what the city requires. There's no evidence in the record that the city actually did require that. Well, isn't that consistent with them retracting their position? That is some circumstantial evidence that they had the opposite position, so I disagree that there's no evidence in the record. Well, if you look at the October 2012 letter that the city issued, it doesn't speak specifically to re-roofing projects, and it's consistent with the January letter in that when it speaks to new construction, that certainly new construction requires solid decking. Well, shouldn't the jury be the interpreter of whether these letters contradict and whether the city had a different position or not? I don't believe so. I think whether there was an actual enforcement is a legal question. Whether there was some fact showing that the city was enforcing at the relevant time, that's the question at issue here. Well, that's one question. The other question is whether there is actually a legal requirement under the ordinance, and those two questions kind of— The enforcement of it, I put to you, is a factual question. The actual enforcement. And it has legal dimensions to it. But you start with the fact that the ordinance says what it says, and then the question, it's really non-enforcement of that. That inevitably takes you beyond the legal question into, factually, what's the city doing? Are they out there telling people you can't do that? And that's what this guy came in and said, and they're not. What's your position on the interpretation of the ordinance? Our position on the interpretation of the ordinance is that we believe the city of Michigan is correct, that it does not require an upgrade to solid decking in a re-roofing situation. The ordinance doesn't speak to it. The city now says, we agree, there's no requirement to upgrade to solid sheathing. So if that's the case, then the ordinance writer is never triggered in the first instance. If you were not to prevail on your interpretation, would we have to send the whole thing back, the prompt payment and everything? If we were not to prevail— And I'm not foreshadowing, I'm just covering all the bases. Certainly. Some would have to go back. Our position in the trial court was that since there's no breach of contract, there is no independent injury for any extra contractual issues. And so we went on all claims. We also moved for summary judgment on the misrepresentation claims. Our statement was that we were investigating whether the city of Michigan requires an upgrade of solid decking. After we said that, the city of Michigan says, we don't require an upgrade. So there was never any misrepresentation. So the misrepresentation claims could be affirmed, even if you— But the prompt payment goes back along with the contract, right? If it goes back. I think that it would go back. Okay. Thank you. Let's see. Okay. I'd also like to address the BA properties case, which the Tonys contend controls this case. BA properties concerned different policy language and also a different factual situation. In BA properties, there was a hurricane in the Virgin Islands which damaged a hotel. After that hurricane hit the hotel, the Virgin Islands passed a new ordinance that required various upgrades to the hotel. And the insurer denied coverage for the cost of the upgrades because they said that the ordinance came into effect after the hurricane. The court there, in my opinion, properly said that when the ordinance comes into effect after the loss, that there is no coverage under the ordinance writer. And you see that in the policy language that was at issue there, which says the policy covers replacement costs at the time and place of loss, whether or not a building is rebuilt or replaced, including the increased cost occasioned by the enforcement of a city ordinance. So all that they were looking at in BA properties was the time of the loss. That's not what state farms policy requires. In state farms policy, again, you look to legally require changes caused by the enforcement. But then the policy also provides that we will not pay the increased cost of construction under this coverage until the dwelling is actually repaired or replaced. So the policy contemplates that it will only pay the increased cost of construction that is actually performed. Again, this is going back to the causation issue that we discussed earlier. But here, since there was no upgrade performed, the coverage is not triggered. And I'd also like to address something else that Ms. Ray brought up, which she seemed to suggest, or the way that I heard it, was that state farms waived its enforcement argument because it didn't specifically state it was investigating whether there was an enforcement in its November 2012 letter. The November 2012 letter said there's a coverage question regarding the ordinance or law coverage. It cites the entire provision and then says state farms investigating whether any upgrade is required under the city emissions law. It's the case under Texas law that even if you assume that's a waiver, that a waiver can't create coverage under an insurance policy. That said, I don't think that there is a waiver because what state farms said is there's a coverage question as to this ordinance. That would mean that when we come to court later, you would have to establish each element of coverage under that provision. Is it your position that enforcement must be directed specifically at the policyholder? I think that's correct. And your basis for that is what? It's the policy language itself. It says that we'll only pay for legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building ordinance. So if we only pay for changes that are caused by enforcement, that would specifically require that some enforcement go to the insured itself. And here, there was no enforcement. The city hasn't required them to do anything. So in effect, you would require them to get tagged on their job or get some kind of letter that says if you go forward, we'll fine you with $100 a day or whatever it is? Well, I think what would happen is the Tonys would apply for a permit and say, we're going to do a re-roof with wood shake on the existing space sheathing. The city would then either say, okay, go ahead. And if they did that, then there's no coverage issue because there's no required upgrade. Or it would say, no, we require you to install the solid sheathing because that's what our code requires. I think that would be enough. So you're not requiring them to propel that system on their right? No, I don't think so. What the policy requires is some enforcement. And if the city's told them you're required to do this, I think that would be an enforcement. The St. Luke's opinion seems to be somewhat stingier than that. The St. Luke's opinion is somewhat stingy. I would agree with that. There's no positive action or the hospital's sanction. They actually foresee you going out and defying the city. They're not dealing with a city ordinance here, but actually defying the institution and getting sanctioned, risking that in order to say there's enforcement. That seems extreme to me. How much damage is that? What are the damages that are at issue here? Well, the contract damages are $9,000 approximately. When you take in the extra contractual damages, it's significantly higher. I believe it's something over $100,000. What are those damages? To be honest, Your Honor, I'm not positive what they are. I believe they're just bad faith damages. Bad faith? But that's not been something that I've been focused on. To go back, Judge Elrod, to your question about St. Luke's. What happened in that case is the – I believe it was – I'm not sure if it was the city. But there were two letters issued to a hospital that said state law requires that you bring your electrical system up to code. What Judge Hughes said is just because you get a letter that says you bring your system up to code, that doesn't constitute enforcement because enforcing means that there's some act compelling you to bring the system up to code. Well, that's sort of different, though, than what you just said because you said getting a letter saying that you can't do this, you need to do something else would be enough. It seems similar to the letter that Judge Hughes said wasn't good enough. What I said was that if you applied for a permit and the city rejects your permit and says we are requiring you to install solid sheathing, then I think at that point there is an enforcement because you know that you are not going to be permitted to reinstall your roof as is on the space sheathing. That's not what happened in St. Luke's because all they got was a general letter saying the electrical system has to perform up to code. Similarly here, all there is is a general letter saying that the city of Michigan requires diaphragm bracing and wood frame construction. I guess it doesn't matter whether we agree with St. Luke's or not, but it's not a general letter. It's a specific letter that says you must comply and the health department said they must bring it up to the code and that the previous flood, they were not going to be grandfathered anymore. It seems pretty specific. In the St. Luke's letter? Yes. In St. Luke's it does seem much more specific than what we have in this case. Perhaps that was an enforcement in St. Luke's. Judge Hughes found that it wasn't. It's not particularly relevant to this court because Judge Hughes' opinion is obviously not binding on you, but that's not what we have in this case. All we have is a general letter saying that the city requires diaphragm bracing for wood construction and then it says later that our code doesn't require solid sheathing on a re-roofing project. Again, I would say that there is no evidence. I don't think that that is evidence of enforcement. I don't think there is any evidence of a legally required change because there's no evidence in the record that says the ordinance requires solid sheathing. And again, I don't think there's any evidence of causation because there's no evidence that the city required the Tonys to upgrade their roofs. Unless there are any other questions, I'll give back my last minute of time. Okay, please support. The reason that the Tonys did not install solid decking on their new roof is that they couldn't go back with a wood shake roof because they couldn't afford to because State Farm didn't pay the complete appraisal award. They went back with a cheaper composition roof that does not require solid decking under the city's code. Certainly, as Mr. Owen acknowledged, had State Farm paid for the solid decking, of course they would have installed it. But does that matter if the contract term said only if it's actually done or installed? Do you have a problem with the contract? Well, I don't think the contract says that. I believe actually in the B.A. Properties case the contract did say that, said regardless of whether it's done or it's not done. It doesn't say that in this case. I thought the opposing counsel said to the contrary, the contract requires that the work be done. I thought he said something to that effect. I don't believe it does. The contract provision in the B.A. Properties case did say that explicitly, that they're entitled to coverage for the upgrades regardless of whether or not the work is done. We don't have that here. We didn't have an opportunity to see whether the work would be done or not because they simply didn't pay it. The composition roof is lighter than the shaker roof. So what he did was he was responding to the concern about the adequacy of the decking to replace it with a shaking roof. So he didn't go back and put the shake roof. Your client went to the cheaper route because of the lesser, I know cheaper route, but he went to a lesser roof, if you will, a composition roof. But it is because it is lighter and the decking that's there was adequate to support it. Presumably, yes. The composition roof under the city code does not require solid decking. There's no dispute about that at all, about what the code says about that. But, you know, we can affirm on any ground. And what about this ground that the IRC itself doesn't require it and we should just stop there? Well, if you look at Judge Hughes' opinion in St. Luke's, he says in that case and other cases say you look at, when you're looking at the enforcement, you look not at what the code actually says but what the city is doing at the time. No, but I thought you have to go, you have to prove both things. You have to improve enforcement and you have to prove that the law requires it under this particular insurance contract. I believe that Judge Hughes' comment was in discussing what is legally required. And he says you look to what the city is actually doing or what the governing body is actually doing, not to what the contract, the ordinance says. Assuming that that's not persuasive authority just for the sake of argument, why wouldn't we look at the terms of the IRC and say does it require this or not as a first principle to decide whether it's legally required? And if it's not legally required, then why wouldn't you lose? Well, because what matters is what the city was doing at the time. What was he entitled to at the time under the regulations that were in effect and being enforced however the city was enforcing them at the time of the loss? Well, I thought it has to both be legally required and caused by enforcement. I thought it's two different things. Maybe I'm wrong on that. Well, that's the reading, that's the wording of the BOL rider. But a legal requirement, I mean the city, as Judge Higginbotham acknowledged, interprets its code. I mean, it's subject to interpretation. I mean, legally required is whatever the city says it is when somebody goes to apply for a permit. Is there any evidence that anybody was denied a permit to just replace with the space? He never applied for one. Not him, anybody. I don't, in this case, no, I don't have any, we don't have any evidence of other individuals being denied. I don't have evidence of other individuals putting in the upgrade. Absolutely. Yes. Yes, we have evidence of other people putting in the upgrade, hundreds of other people putting in the upgrade. To address briefly Judge Elrod's question about sending the whole case back, if we send the contract claim back, we have to send the whole case back. If the court finds that they wrongfully withheld the payment for the decking, or there's a fact question about whether or not they wrongfully withheld the payment for decking, goes back to the court, they don't have the estoppel defense on the breach of contract claim. That keeps the extra contractual claims alive. And the prompt pay claim, regardless, goes back. There's a recent decision from Judge, I believe from Judge Boyle, the Graber case out of the Northern District, where she says that it goes back, even if they do pay the appraisal award, prompt pay goes back because it's punitive in nature, and it's intended, the fact that they might have paid it later doesn't release them from the statutory interest obligation. So, regardless, the prompt pay claim goes back. Why does the misrepresentation claim go back, though, if there's no evidence of extreme conduct? Well, and we contend that there is. I mean, in the trial court, Judge, well, their failure to complete a reasonable investigation and their failure to provide coverage. But under our law, it has to be something more than just failure to comply. Well, that's if that's . . . For extreme conduct. Well, and the law generally, I mean, we would contend that the line of cases that says that you have to have a breach of contract in order to have bad faith, I think the Texas Supreme Court is about to consider it. We would contend, and there's some intermediate court opinions that agree with us, that you don't have to have a breach of contract. Those cases that hold that deal with cases where there is found to be no coverage, where you're not talking about a covered claim. That's the rule to which the extreme conduct exception applies. And the Corpus Christi Court of Appeals has explicitly addressed that question within the last year, and I believe that's what the Texas Supreme Court is about to take up. So I guess we'll see where they come out on that. But we would contend that it goes back regardless. They have a statutory duty to perform a reasonable investigation and to pay all damages that a reasonable investigation would have discovered. We would contend that they did not perform a reasonable investigation because had they performed a reasonable investigation, they would have paid all the damages in the first instance. They would have paid the damages that were owed under the policy in the first instance. That's a duty that's separate and apart from any duty of good faith in the insurance contract. So we would contend that the whole case goes back. Thank you. Thank you.